CROWELL & MORING LLP
Attorneys for defendant
Seatac Digital Resources, Inc.
590 Madison Avenue
New York, New York 10022
(212) 895-4200

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x

YCD MULTIMEDIA, INC.,

                              Plaintiff.,

    - against -

INTEGRATED MEDIA SYSTEMS, INC. d/b/a
BE MEDIA, and SEATAC DIGITAL RESOURCES,
INC.,

                              Defendants.

-----------------------------------------------------------------x

Case No. 09 CIV 10124
ECF CASE
(RH JCS)

## DEFENDANT SEATAC DIGITAL RESOURCES, INC.'S
## ANSWER AND COUNTERCLAIMS

Seatac Digital Resources, Inc. ("Seatac"), as and for its answer to the First Amended Complaint (the "Complaint") of YCD Multimedia, Inc., respectfully:

1. Denies knowledge or information sufficient to form a belief as to the allegations contained in ¶ 1 of the Complaint.

2. Denies knowledge or information sufficient to form a belief as to the allegations contained in ¶ 2 of the Complaint.

3. Admits the allegations contained in ¶ 3 of the Complaint.

4. Denies knowledge or information sufficient to form a belief as to the allegations contained in 4 of the Complaint.

NYIWDMS: 11467423_

5. Denies the allegations contained in ¶ 5 of the Complaint.

6. Denies knowledge or information sufficient to form a belief as the allegations contained in paragraph 6 of the Complaint, except to state that YCD and Integrated Media Systems, Inc. d/b/a Be Media ("Be Media") entered into the Integrator Agreement in the form annexed to the Complaint as Exhibit 1 and that the Integrator Agreement is the best evidence of the terms and conditions of such agreement.

7. Denies the allegations contained in ¶ 7 of the Complaint, except to state that the Integrator Agreement authorized Be Media to license and/or sell YCD Hardware, YCD Software and YCD Services (all as hereafter defined) for at least three years.

8. Denies the allegations contained in ¶ 8 of the Complaint except to state that: (i) pursuant to the Integrator Agreement, YCD was to provide HASPs which are USB devices which do not contain the YCD Software (as hereafter defined), but which simply act as a key for those who had already licensed and installed YCD Software to utilize same; (ii) a small one-time fee was paid for each HASP provided by YCD; and (iii) YCD can terminate software services to any customer regardless as to whether or not they have a HASP.

9. Denies knowledge or information sufficient to form a belief as to the allegations contained in ¶ 9 of the Complaint.

10. Denies the allegations contained in ¶ 10 of the Complaint except to state that under § 12 of the Integrator Agreement, Be Media was required to make a one time payment for each HASP ordered, and monthly payments with respect to other YCD Hardware (as hereafter defined) and YCD Software to the extent such hardware and software was actually being used by Customers.

11. Admits the allegations contained in ¶¶ 11 and 12.

12. Denies knowledge or information sufficient to form a belief as to the allegations contained in ¶ 13 of the Complaint.

13. Denies the allegations contained in ¶ 14 of the Complaint, except to state that the Assignment did not absolve Be Media of any liability that it may have under the Integrator Agreement.

14. Denies knowledge sufficient to form a belief as to the allegations contained in ¶ 15 of the Complaint, except to state: (i) Seatac executed the Assignment annexed to the Complaint as Exhibit 2; (ii) YCD thereafter performed some services under the Integrator Agreement, but breached the Integrator Agreement; and (iii) Seatac made payments to YCD of $16,368 on or about September 9, 2008, $16,564 on or about September 26, 2008, and $16,164 on October 28, 2008.

15. Denies the allegations contained in ¶ 16 of the Complaint, except to state that in or about September 2008, YCD, Be Media and Seatac had discussions concerning entry into a possible memorandum of understanding, that Exhibit 3 to the Complaint is just a draft of a memorandum of understanding that was being discussed by the parties and that Exhibit 3 to the Complaint was never executed by the parties.

16. Denies the allegations contained in ¶ 17 of the Complaint, except to state that in or about September 2008, YCD, Be Media and Seatac had discussions concerning entry into a possible distribution agreement, that Exhibit 4 to the Complaint is just a draft of a distribution agreement that was being discussed by the parties and that Exhibit 4 to the Complaint was never executed by the parties.

17. Denies the allegations contained in ¶ 18 of the Complaint.

18. Denies the allegations contained in ¶ 19 of the Complaint except to state that as a result of Plaintiff's breaches of the Integrator Agreement, Seatac terminated its relationship with Plaintiff.

19. Denies the allegations contained in ¶ 20 of the Complaint.

20. Denies the allegations contained in ¶ 21 of the Complaint, except to state: (i) if YCD terminated the Integrator Agreement for cause, then Be Media could continue to provide the Service (as defined in the Integrator Agreement) to existing Customers (as hereafter defined) and YCD could collect with respect to such Customers that were still being serviced an amount equal to 5 years cost of renting according YCD's price list for the products listed on Exhibit B of the Integrator Agreement; (ii) YCD was in material breach of the Integrator Agreement and did not terminate it for cause; and (iii) YCD is not providing any Services to Customers.

21. Denies the allegations contained in ¶ 22, 23, 24, 25, 26 and 27 of the Complaint.

22. Repeats and incorporates ¶¶ 1 through 21 of this Answer in response to the allegations contained in ¶ 28 of the Complaint.

23. Denies the allegations contained in ¶¶ 29, 30 and 31 of the Complaint.

24. Repeats and incorporates ¶¶ 1 through 22 of this Answer in response to the allegations contained in ¶ 32 of the Complaint.

25. Denies the allegations contained in ¶¶ 33, 34, 35, 36, 37 and 38 of the Complaint.

26. Repeats and incorporates ¶¶ 1 through 25 of this Answer in response to the allegations contained in ¶ 39 of the Complaint.

27. Denies the allegations contained in ¶¶ 40, 41, 42 and 43 of the Complaint

### AS AND FOR THE FIRST AFFIRMATIVE DEFENSE

28. The Court lacks personal jurisdiction over Seatac.

### AS AND FOR THE SECOND AFFIRMATIVE DEFENSE

29.   The action should be dismissed based upon improper venue.

### AS AND FOR THE THIRD AFFIRMATIVE DEFENSE

30.   Plaintiff's claims should be dismissed because the Integrator Agreement requires a party to seek mediation prior to the commencement of lawsuit under such agreement, and Plaintiff failed to first commence a mediation.

### AS AND FOR THE FOURTH AFFIRMATIVE DEFENSE

31.   Plaintiff's claims against Seatac are barred by the Statute of Frauds.

### AS AND FOR THE FIFTH AFFIRMATIVE DEFENSE

32.   Plaintiff's claims are barred because Plaintiff materially breached the Integrator Agreement.

### AS AND FOR THE SIXTH AFFIRMATIVE DEFENSE

33.   Plaintiff's claim is barred by its failure to mitigate damages.

### COUNTERCLAIMS AGAINST YCD

Seatac, as and for its counterclaim against YCD, respectfully alleges:

### BACKGROUND/THE INTEGRATOR AGREEMENT

1.   On or about August 23, 2007, YCD and Be Media entered into an agreement, entitled "Integrator Agreement."

2.   Under the Integrator Agreement YCD granted Be Media a non-exclusive license to distribute and market certain hardware (the "YCD Hardware") and software (the "YCD Software") and to provide certain services ("YCD Services") in connection therewith for a period of 3 years, subject to certain extensions permitted under the Integrator Agreement.

3.   Except for an initial $11,000 payment, Be Media was not required to pay any monies to YCD under the Integrator Agreement unless it was able to enter into contracts with

customers ("Customers") for the rental or licensing of YCD Hardware, YCD Software and/or the YCD Services. If Be Media entered into contracts with Customers for the YCD Hardware, YCD Software and/or the YCD Services, then Be Media was responsible for paying fees to YCD for such hardware and software and/or services pursuant to the terms of the Integrator Agreement.

4. In connection with the use of YCD Software that would be provided to Customers, Be Media would provide each of the Customers with a HASP, which was provided by YCD. The HASP did not contain the YCD Software. The HASP did not allow persons who were not receiving the signal for YCD's software to access such software. Rather, the HASP operated as a key to receiving the software services if you were a Customer. If a Customer was already receiving the YCD Software from YCD, it could only access and use such software if the Customer had a HASP. Moreover, even if the Customer had a HASP, YCD still had the ability to terminate YCD Software to the Customer.

5. HASPs were not rented by customers on a monthly or periodic basis; rather a small one-time fee was paid up front for each HASP that was needed for a Customer to operate the YCD Software.

6. Under §10 of the Integrator Agreement, YCD was required to provide support services for any problems with the YCD Hardware and YCD Software which was: (i) beyond First Level Support (as defined in the Integrator Agreement); and (ii) that required access to the Source Code of the products (hereafter referred to as "Support Obligation").

7. Additionally, under the Integrator Agreement, YCD was required to provide training services in connection with the YCD Hardware and YCD Software.

### SEATAC'S AGREEMENT WITH CMH

8. CARE Media Holdings ("CMH") is a company which provides advertiser-supported educational programming to medical specialty offices ("Medical Offices").

9. CMH retained Be Media to transmit the CARE Media programming to Medical Offices, which it purported to do using YCD Hardware, YCD Software and YCD Services.

### PROBLEMS WITH THE YCD HARDWARE, YCD SOFTWARE AND YCD SERVICES

10. Almost immediately, CMH began experiencing serious delays and problems associated with the installation of the YCD Hardware, YCD Software and the YCD Services. CMH requested that Seatac, which was working on other unrelated projects for CMH, address these problems.

11. Seatac determined that it would be best if Be Media's rights and obligations under the Integrator Agreement were assigned to Seatac so that it could deal directly with YCD on these problems.

### THE ASSIGNMENT OF THE INTEGRATOR AGREEMENT

12. The Integrator Agreement provided that it could be assigned by Be Media, provided it was not assigned to a competitor.

13. By assignment dated August 20, 2008, Be Media assigned all of its rights and obligations under the Integrator Agreement to Seatac, provided however, that Be Media would remain liable for its obligations under the Integrator Agreement (the "Assignment").

### YCD'S REPEATED MATERIAL BREACHES OF THE INTEGRATOR AGREEMENT

14. The assignment of the rights and obligations under the Integrator Agreement to Seatac had virtually no effect on the substantial problems associated with the YCD Hardware, YCD Software and YCD Services.

15. YCD repeatedly and materially breached its obligations under the Integrator Agreement. YCD failed to provide any training. Additionally, YCD breached its Support Obligations under the Integrator Agreement. YCD would only provide technical services from

its office in Israel. Because of the time difference, it could only be contacted for technical service by email and YCD's responses would be sent by email in the middle of the night.

16. Additionally, YCD's software was supposed to have the ability to tell Seatac how many Medical Offices were viewing CMH programming at any given time. However, YCD was unable to, or failed to, provide information to Seatac as to when and how many times an advertisement ran, or was reviewed by Customers. As a result CMH could not represent to advertisers how many persons viewed their advertisements or commercials.

17. The YCD Software was ill adapted to carrying video signals to the Medical Offices. The YCD Software was unable to provide video content to any Medical Offices without substantial technical support and technician time, which services YCD, in breach of the Integrator Agreement, refused to provide.

18. As a result of all of these substantial problems and YCD's numerous material breaches of the Integrator Agreement, in or about September 29, 2009, Seatac was required to replace the YCD Hardware and YCD Software in the Medical Offices with hardware and software from another company.

19. This replacement of YCD Hardware and YCD Software cost approximately $195,000.

20. Additionally, Seatac was required to pay $62,030 to contractors who had performed installations of YCD Hardware and/or YCD Software for Customers at Be Media's request, but who were not paid by Be Media.

### AS AND FOR SEATAC'S FIRST COUNTERCLAIM AGAINST YCD

21. Seatac repeats and incorporates ¶¶ 1 through 20 of these Counterclaims and Cross Claims as if fully set forth herein.

22. YCD's failure to provide training and customer service constituted material breaches of the Integrator Agreement.

23. As a result of YCD's breaches of the Integrator Agreement, Seatac incurred substantial damages in excess of $195,000.

WHEREFORE, Seatac respectfully requests entry of judgment against YCD in an amount not less than $195,000 plus legal fees and costs associated with this action plus such other and further relief as is just and proper.

Dated: February 10, 2010
    New York, New York

        Respectfully submitted,

        CROWELL & MORING LLP
        Attorneys for Seatac Digital Resources, Inc.
        590 Madison Avenue
        New York, New York 10022
        (212) 895-4200


        By: /s/ Bruce J. Zabarauskas
            Bruce J. Zabarauskas, Esq.
            Mark S. Lichtenstein, Esq.